UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

E.I. DU PONT De NEMOURS
AND COMPANY,

                         Plaintiff,

     v.                                       **DECISION AND ORDER**
                                              05-CV-317S

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, and
JAMES L. BRIGGS,

                         Defendants.

       1.      On April 28, 2005, Plaintiff E.I. DuPont De Nemours and Company ("DuPont") filed a Summons and Complaint in New York State Supreme Court, County of Erie, against the United Steel Workers Union ("Union") and its business representative, James Briggs ("Briggs"). In its Complaint, DuPont seeks the return of photographs depicting the interior of its chemical manufacturing facility located in Niagara Falls, New York ("Niagara Site"). In relevant part, the Complaint asserts that in its efforts to protect information about its chemical manufacturing processes, DuPont: (1) prohibits anyone, including authorized visitors, employees and management from having cameras or taking photographs or videotape without the express permission of management; (2) requires every employee at the Niagara Site to sign a confidentiality agreement as a condition of employment stating that the employee is prohibited from disclosing any of DuPont's trade secrets; and (3) designates as a major misconduct offense the unauthorized use or disclosure of any confidential information acquired through employment with the company. Compl., ¶ 7. The Complaint asserts three causes of action against Mr. Briggs and the Union: misappropriation of trade secrets, return of chattel and conversion.

       2.      On May 5, 2005, the Defendants removed this case to the United States

1

District Court for the Western District of New York. In removing this matter, the Union asserted that the photos, which were taken by and delivered to Mr. Briggs' office by an unknown person, depict unsafe working conditions at the Niagara Site. Defendant Briggs alleged that he disclosed the photographs to DuPont representatives to substantiate his claims of unsafe working conditions at the Niagara Site during an April 6, 2005 labor-management meeting. As such, the Union contended that its possession of the photographs is authorized by virtue of its role as the exclusive bargaining agent of the bargaining unit employees under federal law and under the Collective Bargaining Agreement ("CBA"), to which DuPont and the Niagara Plant Employees Union are parties. In relevant part, the CBA explicitly states that "[t]he Union has been and is recognized by the Company as the sole and exclusive bargaining agency for the employees . . . for the purpose of collective bargaining with respect to rates of pay, wages, hours of work, and other conditions of employment." Not. of Rem., Ex. A, p. 6. Further, Article XIII of the CBA provides that "[s]afety, health and sanitary conditions will be proper subjects of discussion between the management and the union at any mutually convenient time." Not. of Rem., Ex. A, p. 28. Accordingly, the Union argued that its authorization to possess the photographs "inherently requires an interpretation of the [CBA] and is inextricably intertwined with the consideration of the terms of the [CBA]," such that this Court has original jurisdiction over this matter pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Not. of Rem., ¶¶ 13-21.

3.     On May 11, 2005, DuPont moved to remand this case to state court and requested an expedited hearing on its motion. That same day, this Court referred this case to the Honorable Hugh B. Scott, United States Magistrate Judge, for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1).

4.     Judge Scott granted DuPont's request for an expedited hearing on its Motion to Remand on May 12, 2005, and set an accelerated briefing schedule. After reviewing

the parties' submissions, Judge Scott issued a Decision and Order on May 19, 2005, denying DuPont's Motion to Remand this action to state court.  Specifically, he held that "[t]he determination of the Union's right to possess pictures of dangerous work conditions is inextricably intertwined with its rights and duties under the [collective bargaining agreement] to represent its members and negotiate with DuPont as to health and safety issues at the Niagara site." Decision and Order, p. 12.  Accordingly, Judge Scott held that DuPont's state law claims were preempted by Section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185, and that the Union properly removed this matter to federal court.

5.    On June 3, 2005, DuPont filed timely Objections to Judge Scott's Decision and Order in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.3(a)(2).[1]  The Union filed an Amended Memorandum in Opposition to DuPont's Objections on June 23, 2005, and this Court heard oral argument on DuPont's Objections on July 8, 2005.

6.    Rule 72 of the Federal Rules of Civil Procedure provides, in pertinent part, that whenever a magistrate judge issues an order resolving a non-dispositive matter, a party may file objections to that order.  Thereafter, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).

7.    In the instant case, this Court distills DuPont's objections into three major assignments of error:  (1) Judge Scott failed to analyze the elements of DuPont's well-pleaded state law Complaint to determine whether the "heart of the case" is a provision of

---

[1] In support of its objections, DuPont filed a formal list of objections, a memorandum of law, and a reply memorandum of law.  In opposition to DuPont's objections, the Union filed a memorandum of law and an amended memorandum of law.

3

the CBA or non-negotiable state law rights independent of the CBA; (2) Judge Scott erroneously based preemption on collateral matters and defenses offered by the Union; and (3) Judge Scott misapplied Supreme Court and Second Circuit precedent when examining the provisions of the CBA. For the following reasons, DuPont's objections are sustained.

8. As a general matter, a party asserting jurisdiction bears the burden of proving that a case is properly in federal court. United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." Id.; see also 14A Wright & Miller § 3721, at 209-10 ("Defendant always has the burden of establishing that removal is proper.").

9. In the context of removal, only state court actions that could have been filed in federal court in the first instance may be removed to federal court. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429-30, 96 L. Ed. 2d 318 (1987). Absent diversity of citizenship, a removing party must establish that his or her case presents a federal question. 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' under which federal jurisdiction exists only when a federal question is presented on the face of the properly pleaded complaint." Caterpillar, 482 U.S. at 392.

10. Under the "well-pleaded complaint rule," the plaintiff is the "master of the claim," in that he or she may avoid federal jurisdiction by relying exclusively on state law in drafting his or her claims. Id.; see also Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 809, n. 6, 106 S. Ct. 3229, 3233, 92 L. Ed.2d 650 (1986) ("Jurisdiction may not

4

be sustained on a theory that the plaintiff has not advanced."). While federal preemption may be raised as a defense to allegations set forth in a plaintiff's well-pleaded complaint, Caterpillar, 482 U.S. at 392, it is well settled that "[a] case may not be removed to federal court on the basis of a defense of federal preemption, even if the defense is anticipated in the complaint, and even if preemption is the only issue in the case." Foy v. Pratt & Whitney Group, 127 F.3d 229, 232 (2d Cir. 1997).

11.     The Supreme Court has acknowledged an "independent corollary" to the well-pleaded complaint rule, known as the complete preemption doctrine. Caterpillar, 482 U.S. at 393. Where the preemptive force of a federal statute is so extraordinary that it effectively "converts an ordinary state law common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," Caterpillar, 482 U.S. at 393, a removing party may invoke the complete preemption doctrine. Under this doctrine, an action may be removed to federal court, even when a plaintiff's complaint does not itself include a federal cause of action. Foy, 127 F.3d at 232-33 (internal citations omitted). This corollary applies to state law claims preempted by Section 301 of the LMRA, which establishes federal jurisdiction over suits for violation of contracts between an employer and a labor organization. Caterpillar, 482 U.S. at 393-94.

12.     Reasoning that "'[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts,'" the Supreme Court has acknowledged that where a clause in the collective bargaining agreement lies at the "heart of the state-law complaint," that complaint arises under federal law. Caterpillar, 482 U.S. at 394 (quoting Avco Corp. v. Machinists, 376 F.2d 337, 340 (6th Cir. 1967), aff'd, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968)). That is, Section 301 preemptively governs claims "founded directly on rights created by collective bargaining agreements, and also

5

claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, 482 U.S. at 394 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S. Ct. 1904, 1916, 85 L. Ed. 2d 206 (1985)). In other words, "[w]here the resolution of the state law claim depends on an interpretation of the collective bargaining agreement," that claim is preempted. Foy, 127 F.3d at 233. However, "the bare fact that a collective bargaining agreement will be consulted in the course of the state-law litigation plainly does not require that the claim be extinguished." Foy, 127 F.3d at 233 (quoting Livada v. Bradshaw, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994)).

13.     To determine what lies at the heart of a complaint, a court must "begin with the elements of the plaintiff's state law claim." Foy, 127 F.3d at 233 (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L. Ed. 2d 410 (1988)). In the instant case, DuPont's Complaint asserts three causes of action under New York State Law: misappropriation of trade secrets, return of chattel, and conversion.

14.     New York courts have long recognized a cause of action for misappropriation of trade secrets and confidential business information. Geritrex Corp. v. Dermarite Indus., LLC, 910 F. Supp. 955, 961 (S.D.N.Y. 1996) (applying New York law). To succeed on a trade secret misappropriation claim under New York law, a party must demonstrate: (1) that it possessed a trade secret; and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999) (internal citations omitted). The New York Court of Appeals has defined a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407

(1993) (internal citations omitted).

16. To prevail in an action for recovery of chattels under New York law, a plaintiff must establish that he or she has a "superior possessory right" to property that is in the possession of another.  Christie's Inc. v. Davis, 247 F. Supp. 2d 414, 419 (S.D.N.Y. 2002) (citing N.Y. C.P.L.R. § 7101; Honeywell Info. Sys., Inc. v. Demographic Sys., Inc., 396 F. Supp. 273, 275 (S.D.N.Y. 1975)).  A cause of action for conversion is established when "one who owns and has the right to possess personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner."  Shmueli v. Corcoran Group, 9 Misc. 3d 589, 2005 N.Y. Slip Op. 25302 (N.Y. Sup. Ct. 2005) (quoting Republic of Haiti v. Duvalier, 211 A.D.2d 379, 384 (1st Dep't 1995)).

16. Having carefully reviewed the Complaint, this Court finds that the CBA does not lie at the heart of DuPont's state law claims.  As set forth in its Complaint, DuPont has taken every reasonable step to ensure the confidentiality of its trade secrets and confidential business information.  Despite these efforts, DuPont alleges, Mr. Briggs and the Union came into possession of unauthorized photos of the Niagara Site perhaps through the unlawful acts of a Union member.

17. Significantly, DuPont does not claim that the Union's possession of the photos violates the CBA itself.  In that respect, this case does not involve a cause of action for violation of a contract between an employer and a labor organization, which is by definition "a creature of federal law."  Caterpillar, 482 U.S. at 394.  Rather, DuPont contends that the pictures were taken in violation of agreements and mechanisms independent of the CBA, such as visitor policies, work rules or employee confidentiality agreements to which the Union and its international business representative are not

parties. Having reviewed the Complaint, two salient facts emerge: (1) the central question raised by the case is whether the Union has the right to possess photos of the interior of the Niagara Site; and (2) the CBA is completely silent with respect to this right.[2] It necessarily follows from these facts that DuPont's claims are not founded on rights directly created by the CBA and are not "substantially dependent" on the CBA. Rather, in the opinion of this Court, DuPont's state law claims are grounded on well-established principles of state statutory and common law, and are not preempted by Section 301 of the LMRA.

18.     This Court finds that DuPont's state law claims were improvidently removed to federal court based on the Union's federal defense; to wit, that it is authorized to possess the photos by virtue of its role as exclusive bargaining agent under federal labor law and the CBA. Specifically, the Union asserts that because the CBA designates it as the exclusive bargaining agent, and indicates that "[s]afety, health and sanitary conditions will be proper subjects of discussion between the management and the union at any mutually convenient time," Not. of Rem., Ex. A, pp. 6, 28, resolution of this dispute is substantially dependent on the CBA and DuPont's claims are preempted by federal labor law. However, it is well settled that:

> the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-

---

[2] The Union makes an unpersuasive argument that the instant dispute between DuPont and the Union and its international business representative requires an interpretation of Articles IX and X of the CBA, which set forth grievance and arbitration procedures. It is clear to this Court that the grievance procedures established under Article IX exist solely for the benefit of aggrieved employees, and are not intended to be utilized by DuPont. Not. of Rem., Ex. A, p. 22. Article X mandates that any question as to the interpretation of the CBA shall be submitted to arbitration. Not. of Rem., Ex. A, p. 24. However, as previously discussed herein, the instant dispute does not require an interpretation of the CBA, but rather, concerns itself with whether DuPont or the Union has superior possessory rights to the photos under New York law, giving proper consideration to DuPont's internal policies, work rules, and employee confidentiality agreements. That is not to say that the CBA will not be consulted during the litigation of DuPont's claims. However, the "bare fact" the CBA may be consulted does not establish that DuPont's Complaint is preempted by federal law. Foy, 127 F.3d at 233. As the Supreme Court has made clear, "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement[ ] is pre-empted by § 301. . . ." Allis-Chalmers, 471 U.S. at 211.

8

pleaded complaint rule -- that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

Caterpillar, 482 U.S. at 398-399.

19.   Based on the foregoing, this Court finds that Judge Scott erred as a matter of law when he determined, based on the Union's federal defense, that DuPont's state law claims were preempted. The law is clear: "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are preempted does not establish that they are removable to federal court." Caterpillar, 482 U.S. at 398. Under the circumstances, this Court does not agree with Judge Scott that "[t]he determination of the Union's right to possess pictures of dangerous work conditions is inextricably intertwined with its rights and duties under the [collective bargaining agreement] to represent its members and negotiate with DuPont as to health and safety issues at the Niagara site." Decision and Order, p. 12. Having reviewed the Complaint, this Court finds DuPont's state law claims are not founded directly on rights created in the CBA, nor is the resolution of these claims substantially dependent on an analysis of the CBA. Rather, DuPont's misappropriation, return of chattel, and conversion claims are predicated on well-established principles of state statutory and common law independent of the CBA and therefore, are not preempted by Section 301 of the LMRA.

IT HEREBY IS ORDERED, that DuPont's Objections to Judge Scott's Decision and

Order (Docket No. 31) are SUSTAINED.

FURTHER, that Judge Scott's Decision and Order denying Dupont's Motion to Remand to State Court (Docket No. 26), insofar as it concludes that DuPont's state law claims are preempted by Section 301 of the LMRA, is SET ASIDE.

FURTHER, that DuPont's Motion to Remand to State Court (Docket No. 6) is GRANTED.

FURTHER, that this case is remanded to state court.

FURTHER, that the Clerk of this Court shall take the steps necessary to close this case.

SO ORDERED.


Dated:   November 15, 2005
         Buffalo, New York


                                              /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge